FILED
U.S. DISTRICT COURT

2008 OCT -3 AM 8:18

CLERK _____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 108-062 |
| | ) | |
| EDWARD JEROME NEWSOME | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

In the above-captioned criminal case, the government has charged Defendant Edward Jerome Newsome with one count of Conspiracy to Distribute and to Possess with Intent to Distribute Schedule I and II Controlled Substances, in violation of 21 U.S.C. § 846, and one count of Possession with Intent to Distribute Schedule I and II Controlled Substances, in violation of 21 U.S.C. § 841(a)(1). The matter is now before the Court on Defendant Newsome's "Motion to Suppress For Violations of the Fourth Amendment to the United States Constitution All Intercepted Conversations and All Fruits Thereof Made from September 27, 2007 to October 27, 2007 Pursuant to the September 27, 2007 Superior Court Order Authorizing the Interception of Wire Communications for the Cell Phone of Kathryn Smith." (Doc. no. 228). The government opposes the motion. (Doc. no. 292).

Defendant Newsome originally argued that information obtained as a result of the wiretap authorized by the September 27, 2007 Order of the Honorable James G. Blanchard, Jr., Superior Court Judge for the Augusta Judicial Circuit, should be suppressed for two reasons: (1) the wiretap affidavit failed to establish the necessity for a wiretap of Kathryn Smith's phone; and, (2) the order authorizing the wiretap violated the statutory minimization

requirements of both Georgia and the United States. (Doc. no. 228; doc. no. 282, Memo. in Support of Mot.). However, in a prior order, the Court instructed Defendant Newsome that if he intended to pursue the minimization issue, he must submit a particularized motion in accordance with Loc. Crim. R. 12.1 that provided allegations that were "sufficiently definite, specific, detailed, and non-conjectural to cause the Court to conclude that a substantial claim exists." (Doc. no. 335, p. 3). Defendant Newsome did not respond to the Court's order, and therefore, the Court deems the minimization issue to have been abandoned. Accordingly, the focus of this Report and Recommendation will be the request for suppression based on an alleged lack of showing of necessity for the wiretap. For the reasons developed below, the Court **REPORTS** and **RECOMMENDS** that the motion to suppress be **DENIED**.

I. **FACTS**[1]

The Richmond County Sheriff's Office (RCSO) began an investigation of the criminal activities of a co-defendant in this case, Patrick Curry, in 2005. (Doc. no. 282, p. 1). The RCSO concluded that Defendant Curry was involved in "one of the largest cocaine distribution networks in the Augusta-Richmond County area" and that he "primarily operated the drug traffic[]king organization from his residence located at 2418 Lisbon Dr., Augusta, Georgia." (Id.). On August 28, 2007, Judge Blanchard initiated a pen register on a cellular telephone number belonging to Kathryn Smith. (Id.). The duration and telephone numbers of 5,320 calls were recorded by this pen register, and "[s]ome of the numbers were linked to several convicted, known, or suspected drug dealers." (Id. at 2).

---

[1] As there was no need for an evidentiary hearing to further develop the record, the facts are based on the filings in the record by Defendant Newsome and the government.

2

On September 27, 2007, then-Assistant District Attorney for the Augusta Judicial Circuit, Ashley Wright, applied to Judge Blanchard for a wiretap of the cellular telephone of Kathryn Smith, and Defendant Newsome was identified in the application affidavit as one of the persons whose calls would be intercepted. (Id.). Judge Blanchard approved the wiretap and ordered Suncom Wireless to place the wiretap that same day. (Id.). Local and federal agents then intercepted wire communications to and from Kathryn Smith's cellular telephone between September 27, 2007 and October 26, 2007. (Doc. no. 292, p. 1).

The sixty-three page affidavit in support of the wiretap application contains extensive details of the RCSO investigation. (Doc. no. 292, Aff.). In particular, the affidavit explains that a pen register had been employed and that an analysis of the number and duration of calls, as well as the persons from whom the calls came (including Defendant Newsome), suggested drug trafficking operations. (Id. at 44-45). The affidavit also explains that many of the persons identified via the pen register had extensive drug-related criminal histories, but tracing other users identified via the pen register as prepaid cellular telephone users could be problematic for law enforcement because of the ease with which such phones are discarded and/or transferred to others once the subscriber runs out of time. (Id. at 46).

The affidavit also outlines conventional investigative techniques used in the investigation, including the use of an informant, but it also explains why such techniques had achieved only limited success or were otherwise too dangerous to pursue. (Id. at 46-55). As the government explains in detail in its response to Defendant Newsome's motion, the affidavit also explains why simply interviewing subjects or associates would not provide sufficient information as to the participants and inner workings of the conspiracy under

3

investigation.[2] (Doc. no. 292, p. 3 (citing Aff., p. 49)). The affidavit goes on to detail that while the pen register provided some identifying information, such investigative techniques did not provide the substance of communications or otherwise provide the identities of parties to the conversations. (Id. (citing Aff., p. 54)). Likewise, a search of Defendant Curry's residence had been conducted, but the use of search warrants did not usually establish the full scope of criminal activity or various methods employed to carry out illegal activities. (Id. at 3-4 (citing Aff., p. 48)).

Similarly, ordinary surveillance techniques were of limited use in this case because of the layout of the housing complex where Defendant Curry lived and because surveillance (1) could not produce direct evidence on the purpose of a meeting, (2) was of little use once subjects moved indoors, and (3) if conducted in close proximity, raises suspicions of targets - particularly because "outsiders" were readily apparent in the neighborhoods where targets lived. (Id. at 4-5 (citing Aff., pp. 50-52)). A grand jury investigation and Global Positioning System (GPS) devices were also considered and rejected by the government because a grand jury investigation would alert members of the conspiracy to the ongoing investigation, and Defendant Curry was known to drive at least four different vehicles. (Id. (citing Aff., pp. 48-52). Undercover agents were also of little value in the investigation because an attempt to infiltrate the organization had been unsuccessful; moreover, the affidavit explains that

---

[2]Indeed, the indictment in this case named sixteen individuals in the conspiracy count. (Doc. no. 3, p. 2).

undercover operations often do not reveal the full scope of an illegal enterprise, and in any event, infiltration of the upper echelons of a close-knit organization like the one under investigation was very unlikely. (Doc. no. 292, Aff., p. 54).

## II. ANALYSIS

The crux of Defendant Newsome's argument for suppression based on alleged infirmities with the affidavit in support of the wiretap boils down to the claim that "the investigators show [in the affidavit] that the wiretap was more convenient than necessary." (Doc. no. 282, p. 3). As the government puts it, "The defendant makes a weak effort to suggest that because investigators did not conduct surveillance on locations which were associated with numbers identified from PEN registers, that officers failed to exhaust conventional investigative means." (Doc. no. 292, p. 2). However, as explained below, the Court concludes that the affidavit in support of the wiretap was sufficient to support the authorization to intercept communications to and from the cellular telephone of Kathryn Smith.

The statute that authorizes government wiretaps requires that an application for electronic interception contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c).[3] As the

---

[3] In 2002, the Georgia statute governing electronic surveillance, O.C.G.A. § 16-11-64, was re-written to be "consistent with and subject to the terms, conditions, and procedures provided for by Chapter 119 of Title 18 of the United States Code Annotated, as amended." O.C.G.A. § 16-11-64; see also Barnett v. State, 576 S.E.2d 923, 924 n.6 (Ga. App. 2003) (noting Georgia statute was rewritten in 2002). Thus, regardless of the fact that a state judicial official authorized the challenged wiretap, the provisions of 28 U.S.C. § 2518 govern the wiretap authorization in this case.

5

Eleventh Circuit has explained:

> The necessity requirement is designed to ensure that electronic surveillance is neither routinely employed nor used when less intrusive techniques will succeed. The affidavit need not, however, show a comprehensive exhaustion of all possible techniques, but must simply explain the retroactive or prospective failure of several investigative techniques that reasonably suggest themselves.

United States v. Van Horn, 789 F.2d 1492, 1496 (11th Cir. 1986) (citations omitted); see also United States v. Pacheco, 489 F.2d 554, 565 (5th Cir. 1974)[4] ("[T]he purpose of the requirement in section 2518(1)(c) is not to foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted, but simply to inform the issuing judge of the difficulties involved in the use of conventional techniques."). The district court is entitled to broad discretion in analyzing the necessity issue, and the government's showing on necessity "must be read in a 'practical and commonsense fashion.'" United States v. Alonso, 740 F.2d 862, 868 (11th Cir. 1984) (citations omitted). Moreover, a wiretap order "will not be overturned 'simply because defense lawyers are able to suggest *post factum* some investigative technique that might have been used and was not.'" Id. at 869 (citing United States v. Hyde, 574 F.2d 856, 867 (5th Cir. 1978)).

Here, as explained in detail above, the affidavit laid out the history of the RCSO investigation and informed Judge Blanchard of the difficulties of using conventional investigative techniques. Law enforcement officers had developed considerable information from the pen register and through the use of a confidential source, but such efforts were of

---

[4]In Bonner v. City of Prichard, the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions that were handed down prior to the close of business on September 30, 1981. 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

limited usefulness in uncovering the scope of the illegal enterprise under investigation.[5] Stated otherwise, officers had uncovered some evidence of illegal activity, but they did not believe that they had uncovered sufficient evidence to expose the full scope of the conspiracy or to otherwise connect each of the targets of the investigation to the suspected conspiracy.[6] Other investigative techniques had been considered and rejected as not being able to accomplish the goals of the investigation and rejected as running the risk of alerting the conspirators of the ongoing investigation.[7]

In sum, the Court is satisfied that the affidavit made a sufficient showing that law enforcement officers had utilized various traditional investigative techniques that were reasonable under the circumstances and that other investigative tools short of a wiretap would not be adequate to flesh out the full scope of the criminal enterprise under investigation or otherwise obtain sufficient evidence to meet the government's burden of

---

[5]For example, the affidavit explains that the pen registers do not provide officers with any certain information that the "calls involve drug trafficking activities nor that those communicated with are co-conspirators." (Doc. no. 292, Aff., p. 54).

[6]The only argument in support of Defendant Newsome's conclusory statement that "the wiretap was more convenient than necessary" comes in the form of a *post hoc* suggestion from defense counsel that more could have been done more with the pen register information. (Doc. no. 282, p. 3). However, as explained above, a wiretap order will not be overturned simply because defense counsel comes up with an after-the-fact suggestion of an investigative technique that could have been used but was not. Alonso, 740 F.2d at 869. Thus, defense counsel's suggestion about what might have been done with the pen register information does nothing to change the Court's analysis as to the adequacy of the wiretap affidavit when it is read in its totality and considered in a "practical and commonsense fashion." Id. at 868.

[7]For example, attempting to place a GPS device on one of the multiple vehicles used by Defendant Curry was deemed not only a risk to the person attempting to install the device, but would require officers to "make an educated guess" as to the vehicle on which to place the device. (Doc. no. 292, Aff., p. 53).

proof at trial. Accordingly, there is no basis for recommending suppression of evidence obtained from the wiretap authorized by Judge Blanchard on September 27, 2007.[8]

## III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the "Motion to Suppress For Violations of the Fourth Amendment to the United States Constitution All Intercepted Conversations and All Fruits Thereof Made from September 27, 2007 to October 27, 2007 Pursuant to the September 27, 2007 Superior Court Order Authorizing the Interception of Wire Communications for the Cell Phone of Kathryn Smith" be **DENIED**.

SO REPORTED and RECOMMENDED this 8th day of October, 2008, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[8]The Court is aware that the motion to suppress also alleges, "The Affidavit fails to set forth facts which would establish that high level of particularized probable cause necessary to justify such a major intrusion of privacy as a wiretap." (Doc. no. 228, p. 2 ¶ 6). However, the memorandum in support of the motion offers no argument on this point. (See doc. no. 282). In any event, there is no merit to this passing allegation about probable cause.

"An application for a wiretap authorization must be supported by the same probable cause necessary for a search warrant." United States v. Nixon, 918 F.2d 895, 900 (11th Cir. 1990). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). Moreover, "the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing] that probable cause existed." Id. at 238-39. Having reviewed the affidavit in detail in analyzing the necessity argument, the Court easily concludes that the affidavit established compelling grounds to believe that intercepted conversations on the target cellular telephone would relate to an on-going drug enterprise.

8